**In the**
**United States Court of Appeals**
**for the Fifth Circuit**

---

No. 25-70012

---

TODD KELVIN WESSINGER,
*PETITIONER - APPELLEE,*

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,
*RESPONDENT - APPELLANT*

---

Appeal from the United States District Court
For the Middle District of Louisiana
USDC No. 3:04-CV-637

---

# PETITION FOR REHEARING EN BANC

---


**CRISTIE GAUTREAUX GIBBENS**
Federal Public Defender for the
Middle and Western Districts of
Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
(337) 262-6336
Cristie_Gibbens@fd.org

**DAVID AARON NOVOD**
Assistant Federal Public Defender

Office of the Federal Public Defender for the Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
(337) 262-6336
David_Novod@fd.org

In the
United States Court of Appeals
for the Fifth Circuit

---

No. 25-70012

---

TODD KELVIN WESSINGER,
*PETITIONER - APPELLEE*,

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,
*RESPONDENT - APPELLANT*

---

Appeal from the United States District Court
For the Middle District of Louisiana
USDC No. 3:04-CV-637

---

**PETITION FOR REHEARING EN BANC**

---

**CERTIFICATE OF INTERESTED PERSONS**

---

Pursuant to Fifth Circuit Rule 28.2.1, undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Judge Below:**

The Honorable John W. deGravelles, United States District Judge

**Petitioner - Appellee:**

Todd Kelvin Wessinger

**Attorneys for the Petitioner - Appellee:**

On Appeal and in the District Court:

Rebecca L. Hudsmith
Attorney at Law
101 Duclos Street
Lafayette, LA 70506

Cristie Gautreaux Gibbens, Federal Public Defender
David Aaron Novod, Assistant Federal Public Defender
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501

Soren E. Gisleson
Herman, Herman & Katz, L.L.C.
Suite 1860
909 Poydras Street
New Orleans, LA 70112

**Attorneys for the Respondent - Appellant:**

On Appeal and in the District Court:

Elizabeth B. Murrill, Attorney General of Louisiana
J. Benjamin Aguinaga, Solicitor General
Morgan Brungard, Deputy Solicitor General
Elizabeth L. Brown, Assistant Solicitor General
Office of the Attorney General

1885 N. 3rd St.
Baton Rouge, LA 70802

In the District Court:

Hillar C. Moore, III, District Attorney
John W. Sinquefield, Special Assistant Attorney General
Dale R. Lee, Assistant District Attorney
Office of the District Attorney
222 St. Louis Street, 5th Floor
Baton Rouge, LA 70802

Lafayette, Louisiana, September 15, 2026.

*s/Cristie Gautreaux Gibbens*
**CRISTIE GAUTREAUX GIBBENS**

## RULE 40(B)(2) STATEMENT

This petition presents three issues of exceptional importance:

1. Whether one panel of the Court may overrule another panel in the same litigation when neither the facts nor the controlling law have changed. The recent panel opinion in this case displaced the conclusions of the prior panel, thereby undermining the fundamental principle that each panel of this Court is equal. The full Court's consideration is necessary to restore uniformity in this litigation and stability within the Circuit generally.
2. Whether the panel's decision to entrench this Court's erroneous departure from every sister Circuit in assessing claim-sameness should stand. In *Nelson v. Lumpkin*, a panel applied a novel test under which any IAC claim made in federal court is subject to 28 U.S.C. §2254(d) whenever any IAC claim pertaining to the same stage of a proceeding was denied on the merits in state court, no matter how different. 72 F.4th 649, 658-660 (5th Cir. 2023). The full Court should determine whether this Circuit should remain an outlier on this issue.

3. The panel's reliance on *Nelson* heightens the need to resolve another circuit split. Petitioner's federal IAC claim was materially different from his state IAC claim because he was arbitrarily denied funding in state court. Yet, the panel applied § 2254(d)'s standard of review without considering whether Petitioner had a full and fair opportunity to litigate his federal claim in state court. That decision conflicts with the decisions of the Second, Fourth, and Tenth Circuits, which recognize that a state court judgment without a full and fair hearing is *not* an adjudication on the merits for purposes of § 2254(d).

<u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS ........................................ i
RULE 40(B)(2) STATEMENT ........................................ iv
TABLE OF CONTENTS ........................................ vi
TABLE OF AUTHORITIES ........................................ viii
ISSUES MERITING EN BANC CONSIDERATION ........................................ 1
STATEMENT OF THE CASE ........................................ 2
ARGUMENT ........................................ 7

I. Rehearing *en banc* is necessary to ensure that one panel is not permitted to overrule another panel without permissible grounds and meaningful notice to the parties. ........................................ 7

A. The law of the case doctrine is well-established and necessary to the functioning of a multi-Judge Court. ........................................ 7

B. *Wessinger II* disregarded the legal and factual conclusions of *Wessinger I* ........................................ 8

1. Mr. Wessinger was not required to overcome the limitations set forth in § 2254(d). ........................................ 9

2. Had the Wessinger I panel held that § 2254(d) applied, Petitioner would have had an opportunity to rebut that conclusion.. ........................................ 11

II. The Court should grant rehearing en banc to restore its longstanding test to determine when federal-court and state-court claims are the same ........................................ 12

A. *Nelson* and *Wessinger II* upended decades of decisions from this Court. ........................................ 13

B. *Nelson* is wrong and in conflict with every other circuit. ........................................ 15

C. Petitioner's sentencing-phase IAC Claim is a fundamentally altered, new claim. ........................................ 16

III. The Court should reconsider whether a federal claim has been "adjudicated on the merits" under § 2254(d) where the state court did not afford a full and fair hearing.......................................................17
CONCLUSION ..........................................................................................20
CERTIFICATE OF SERVICE ...............................................................21
CERTIFICATE OF COMPLIANCE.......................................................21

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Johnson*, 338 F.3d 382 (5th Cir. 2003) ................................ 13
*Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983) ........................................ 13
*Detrich v. Thornell*, 178 F.4th 1183 (9th Cir. 2026) ................................ 16
*Drake v. Portuondo*, 321 F.3d 338 (2d Cir. 2003) ...................................... 18
*EEOC v. International Longshoremen's Asso.*, 623 F.2d 1054 (5th Cir. 1980) .......................................................................................... 7
*Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014) ............................... 13
*Gochicoa v. Johnson*, 238 F.3d 278 (5th Cir. 2000) ..................................... 8
*Gonzalez v. Crosby*, 545 U.S. 524 (2005) ................................................. 16
*Graham v. Johnson*, 94 F.3d 958 (5th Cir. 1996) ............................. 13, 17
*Harrington v. Richter*, 562 U.S. 86 (2011) ............................................... 18
*Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375 (5th Cir. 2008) ..... 10
*Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992) ........................................... 19
*Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003) ............................... 13, 17
*L.L.C. v. Magazine Invs.*, 79 F.4th 487 (5th Cir. 2023) ............................ 10
*Lincoln Nat'l Life Ins. Co. v. Roosth*, 306 F.2d 110 (5th Cir. 1962) (en banc) ............................................................................................ 8
*Lockhart v. Fretwell*, 506 U.S. 364 (1993) ............................................... 15
*Lucio v. Lumpkin*, 987 F.3d 451 (5th Cir. 2021) (en banc) ...................... 16
*Martinez v. Ryan*, 566 U.S. 1 (2012) ...................................................... 4, 5
*Mendoza v. Lumpkin*, 81 F.4th 461 (5th Cir. 2023) ................................. 14
*Nelson v. Lumpkin*, 72 F.4th 649 (5th Cir. 2023) ........................... passim
*Pondexter v. Quarterman*, 537 F.3d 511 (5th Cir. 2008) ......................... 10
*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) ................................... 12
*Sears v. Warden GDCP*, 73 F.4th 1269 (11th Cir. 2023) .......................... 16
*Sellan v. Kuhlman*, 261 F.3d 303 (2d Cir. 2001) ..................................... 18
*Seminole Tribe v. Florida*, 517 U.S. 44 (1996) ........................................... 8
*Shinn v. Ramirez*, 596 U.S. 366 (2022) ................................................... 15
*Smith v. Quarterman*, 515 F.3d 392 (5th Cir. 2008) ................................ 13
*Smith v. Spisak*, 558 U.S. 139 (2010) ...................................................... 15
*State ex rel. Wessinger*, 2003-3097 (La. 9/3/04), 882 So.2d 605 ............... 4

*State ex rel. Williams v. State*, 2004-75 (La. 12/1/04), 888 So.2d 792 ..... 4
*State ex rel. Williams v. State*, No. 07-94-0871 (Feb. 4, 2005) ................ 4
*Taylor v. Sturgell*, 553 U.S. 880 (2008) ................................................ 19
*Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745 (5th Cir. 1985) ................................................................................................ 8
*United States v. Becerra*, 155 F.3d 740 (5th Cir. 1998) ........................... 8
*Valdez v. Cockrell*, 274 F.3d 941 (5th Cir. 2001) ............................... 18, 19
*Valentino v. Clarke*, 972 F.3d 560 (4th Cir. 2020) ................................ 18
*Wessinger v. Louisiana*, 528 U.S. 1050 (1999) ........................................ 2
*Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (en banc) ............ 18

**Statutes**

28 U.S.C. § 2254 ........................................................................ passim

**Rules**

Fifth Circuit Rule 28.2.1 ........................................................................ i

**Treatises**

BRIAN R. MEANS, POSTCONVICTION REMEDIES § 27:31 ............ 16

In the
United States Court of Appeals
for the Fifth Circuit

---

No. 25-70012

---

TODD KELVIN WESSINGER,
*PETITIONER - APPELLEE*,

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,
*RESPONDENT - APPELLANT*

---

Appeal from the United States District Court
For the Middle District of Louisiana
USDC No. 3:04-CV-637

---

# PETITION FOR REHEARING EN BANC

---

## ISSUES MERITING EN BANC CONSIDERATION

1. Can one panel overrule another in the same litigation when neither the facts nor the controlling law have changed?

2. Has a petitioner's habeas IAC claim been "adjudicated on the merits" in state court under 28 U.S.C. § 2254(d) whenever any IAC claim

pertaining to the same stage of a proceeding was denied on the merits in state court, however different?

3. Has a federal claim been "adjudicated on the merits" under 28 U.S.C. § 2254(d) if the petitioner did not have a full and fair opportunity to litigate the claim in state court?

## STATEMENT OF THE CASE[1]

### 1. State Post-Conviction

On January 3, 2001, the Louisiana Supreme Court appointed first-year associate Soren Gisleson to represent Petitioner *pro bono* in state post-conviction proceedings. ROA.16389; ROA.16452. At the time, no state-funded entity existed to represent Louisiana death-row inmates in post-conviction proceedings, and the Louisiana State Bar Association recruited civil firms to fill the gap. ROA.16398; ROA.16464.

Gisleson filed a motion for funding to develop Petitioner's ineffective-assistance of counsel (IAC) claims. ROA.16390; ROA.16453. Gisleson also sought funding from the Louisiana Indigent Defense Assistance Board (LIDAB), the East Baton Rouge Indigent Defense

[1] Because the panel's opinion sets out the "long, tangled procedural history" of this case, Panel Op. 2-10, Petitioner provides only the relevant procedural history that is not included in the panel's opinion.

Board (EBRIDB), and the Louisiana Crisis Assistance Center (LCAC), but each declined. ROA.16399-16400; ROA.16465. That spring, the Capital Post-Conviction Project (CPCPL) was formed to represent indigent capital post-conviction petitioners, but CPCPL told Gisleson that it could not provide funds for clients represented by *pro bono* counsel. ROA.16400-16401; ROA.16466-16467.

Gisleson pressed for a hearing on his funding motion. The court determined that LIDAB was responsible. ROA.16391; ROA.16454-16455. However, LIDAB confirmed that its capital post-conviction funds were unavailable for already-represented clients; EBRIDB likewise reported that it had no funds available. ROA.16402; ROA.16468-16469. The state court nevertheless denied Petitioner funding. ROA.16393; ROA.16457.

Without investigative resources, Gisleson filed an amended petition based essentially on the state-court record and limited information obtained from a couple phone calls with Petitioner's mother. ROA.16404; ROA.16472. CPCPL again denied assistance in 2003, and Gisleson filed a second amended petition without state funding. ROA.16406; ROA.16474-16475. The state court dismissed the claims in the first amended petition and denied the IAC claims in the second amended

petition without a hearing. ROA.16394; ROA.16458. The Louisiana Supreme Court denied writs. *State ex rel. Wessinger*, 2003-3097 (La. 9/3/04), 882 So.2d 605. LIDAB was later found to have exceeded its authority in creating a policy denying funding to inmates with *pro bono* counsel, and the policy was changed. *State ex rel. Williams v. State*, 2004-75 (La. 12/1/04), 888 So.2d 792, and *State ex rel. Williams v. State*, No. 07-94-0871 (Feb. 4, 2005).

**2. Federal Habeas**

Petitioner filed a habeas petition. ROA.40. After obtaining federal funding, he filed an amended petition. His penalty-phase IAC claim (Claim XI-C) was materially different than the claim presented in state court. ROA.1464; ROA.1695. In its Opposition, the State argued that Claim XI-C "goes way beyond what he presented to the state courts." ROA.2458; ROA.2608. The district court denied the petition. ROA.2662.

In a Rule 59(e) motion, Petitioner argued that Claim XI-C was fundamentally altered by supporting evidence never presented in state court, and was therefore a new, unexhausted, and procedurally defaulted claim, but that the default should be excused. ROA.2743; ROA.2757. First, relying on *Martinez v. Ryan*, 566 U.S. 1 (2012), he argued that post-

conviction counsel was ineffective. Second, he argued that Louisiana's refusal to provide necessary investigative and expert funding rendered the state corrective process ineffective under 28 U.S.C. § 2254(b)(1)(B)(ii). ROA.2771-2772; ROA.2778-2779.

The district court granted the Rule 59(e) motion, recognizing Claim XI-C as a new, procedurally defaulted claim whose default might be excused under *Martinez*. ROA.3235; ROA.3238-3239. At a multi-day hearing, Petitioner presented testimony from post-conviction counsel, experts, family members, friends, and a teacher, together with supporting records; the State presented no witnesses. ROA.3557-3558; ROA.3595-3597. The court found that post-conviction counsel's ineffectiveness provided cause to excuse the default and granted habeas relief on Claim XI-C. ROA.3747.

### 3. The State's First Appeal (*Wessinger I*)

The Fifth Circuit reversed, holding that post-conviction counsel was not ineffective for purposes of excusing Claim XI-C's procedural default. *Wessinger v. Vannoy*, 864 F.3d 387 (5th Cir. 2017) ("*Wessinger I*"). It concluded that the absence of evidentiary support in state court was "not attributable to Gisleson's inexperience or any particular error, but rather

to the state post-conviction court's decisions to deny a hearing, discovery, and funds." *Id.* at 393.

#### 4. District Court Proceedings After *Wessinger I*

Following remand to the district court, Petitioner sought summary judgment on the "inadequate state process" ground for excusing default of Claim XI-C. ROA.16356; ROA.16362; ROA.16388. The State argued that Petitioner failed to establish cause and prejudice. Doc. 282-1. The district court granted Petitioner's motion, finding Claim XI-C's default excused by the inadequate state corrective process, and again granted sentencing relief. ROA.16588.

#### 5. The State's Second Appeal (*Wessinger II*)

On August 18, 2026, a newly composed panel reversed. Without addressing *Wessinger I*, the panel reconsidered whether Claim XI-C belonged on the "§ 2254(d) track or the procedural-default track." Panel Op. 17. Relying largely on *Nelson v. Lumpkin*, 72 F.4th 649 (5th Cir. 2023), it held that Claim XI-C was the same ineffective-assistance claim adjudicated on the merits in state court and therefore belonged on the § 2254(d) track. Panel Op. 18-21.

# ARGUMENT

## I. Rehearing *en banc* is necessary to ensure that one panel is not permitted to overrule another panel without permissible grounds and meaningful notice to the parties.

The district court and litigants relied on the *Wessinger I* panel's necessary conclusion that Claim XI-C was a new, procedurally defaulted IAC claim. Without any change in the facts, controlling law, or equities, a new panel in *Wessinger II* issued a second published opinion concluding the opposite, thereby upsetting the established law of this case and the expectations of the litigants. Rehearing *en banc* is required to resolve this intra-court conflict and reiterate the essential point that the law of the case binds subsequent panels.

### A. The law of the case doctrine is well-established and necessary to the functioning of a multi-Judge Court.

As this Court has long recognized, the "law of the case" doctrine provides that "the trial and appellate courts are bound by any findings of fact or conclusions of law made by the appellate court in a prior appeal of the case at issue." *EEOC v. International Longshoremen's Asso.*, 623 F.2d 1054 (5th Cir. 1980). The "law of the case" extends to "things decided by necessary implication as well as those decided explicitly." *EEOC*, 623 F.2d at 1058 (citations omitted). Thus, "[w]hen confronting decisions of

prior panels," a panel is "bound by 'not only the result but also those portions of the opinion necessary to that result.'" *Gochicoa v. Johnson*, 238 F.3d 278 (5th Cir. 2000) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996)).

The doctrine ensures institutional stability in a multi-Judge Court, *Lincoln Nat'l Life Ins. Co. v. Roosth*, 306 F.2d 110 (5th Cir. 1962) (en banc), brings finality to litigation, and "discourages 'panel shopping.'" *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985) (citations omitted).

Three narrow exceptions to the law of the case exist: 1) evidence on a subsequent trial was substantially different; 2) change in controlling authority; or 3) the decision was clearly erroneous and works manifest injustice. *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998).

### B. *Wessinger II* disregarded the legal and factual conclusions of *Wessinger I*.

*Wessinger I* established the law of this case which was entitled to deference by both the district court and subsequent panels of this Court. No new evidence was presented following that ruling; no new controlling authority was issued between *Wessinger I* and *Wessinger II*; and the

decision in *Wessinger I* was neither clearly erroneous nor a manifest injustice.

#### 1. Mr. Wessinger was not required to overcome the limitations set forth in § 2254(d).

The *Wessinger I* panel necessarily concluded that Petitioner's IAC claim had not been adjudicated on the merits in state court. At the time of *Wessinger I*, the district court had already held that the IAC claim belonged on the procedural default "track" and not the §2254(d) track. ROA.16588. The *Wessinger I* panel did not disturb that conclusion. To the contrary, it extensively evaluated whether cause existed to excuse the default and would not have done so unless it agreed there was a default in the first instance.

The *Wessinger I* briefing reinforces the point. The State submitted exhaustive briefing in both the district and circuit court arguing that § 2254(d) applied, yet the *Wessinger I* panel did not agree. This Court has consistently held "that an issue briefed on appeal that is a 'necessary prerequisite[]' to an issue actually decided in the appellate opinion is the law of the case, even if the appellate court's opinion does not explicitly decide the prerequisite issue or grapple with the arguments in the

briefs." *L.L.C. v. Magazine Invs.*, 79 F.4th 487, 494 (5th Cir. 2023) (citations omitted). That is what happened here.

No law-of-the-case exception permitted the *Wessinger II* panel to thereafter place the claim on a different track. The *Wessinger II* panel did not acknowledge its overruling of the first panel, much less defend it.

Instead, the panel relied on *Nelson* to conclude that the IAC claim had been adjudicated on the merits in state court. Panel Op. 18-21. As a panel opinion, *Nelson*, however, is not "controlling authority" sufficient to overrule the prior panel's opinion in this case, *cf. Pondexter v. Quarterman*, 537 F.3d 511 (5th Cir. 2008),[2] or any other case in this Circuit, *see Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).[3] As discussed *infra*, the fact that *Nelson* conflicts with Supreme Court precedent makes the *Wessinger II* panel's reliance on *Nelson* to upend the law of this case even more problematic.

---

[2] *Id.* at 523 ("a prior decision [in the same case] will be followed without re-examination unless, *inter alia*, 'there has been an intervening change of law by a controlling authority'").

[3] *Id.* at 378 ("[O]ne panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our en banc court. Indeed, even if a panel's interpretation of the law appears flawed, the rule of orderliness prevents a subsequent panel from declaring it void.") (citation omitted).

2. **Had the Wessinger I panel held that § 2254(d) applied, Petitioner would have had an opportunity to rebut that conclusion.**

The *Wessinger I* panel expressly found that "the state post-conviction court's decisions to deny a hearing, discovery, and funds" were the impediment that prevented Petitioner from presenting "evidentiary support of his claim to the state postconviction court." *Wessinger*, 864 F.3d at 392. Accordingly, Petitioner returned to district court to litigate – successfully – his alternative basis for cause of this default. ROA.16356. Back in district court, the State likewise accepted that § 2254(d) did not apply to Claim XI-C following *Wessinger I*. The State repeatedly characterized Claim XI-C as procedurally defaulted and subject to cause-and-prejudice analysis. *See* ROA.4242 (arguing that "the net result of the Fifth Circuit's ruling is that … this claim is procedurally barred"); ROA.4156; ROA.16445; ROA.16564. Every party understood that *Wessinger I* maintained Claim XI-C on the "procedural default track."

Thus, when the *Wessinger II* panel inexplicably reconsidered the prerequisite legal conclusion of *Wessinger I* (that the IAC claim had been defaulted), the panel not only violated law of the case, but did so without giving Petitioner fair opportunity to rebut that finding. Nor did the

district court have an opportunity to conduct a § 2254(d) analysis, having relied on the conclusion of *Wessinger I* that the claim was defaulted. *See*, *e.g.*, *Pullman-Standard v. Swint*, 456 U.S. 273, 291-92 (1982) ("Court of Appeals should not have resolved in the first instance [a] factual dispute which had not been considered by the District Court").

None of Petitioner's arguments regarding why the state court's decision was unreasonable under §2254(d) have ever been considered on appeal. The district court's 2012 judgment applying 2254(d) had long been vacated as manifestly erroneous, ROA.3237-3238, and, thus, there was no reason to litigate (d)(1) and (d)(2). These circumstances illustrate why the law-of-the-case doctrine exists. Rehearing *en banc* is necessary to correct course.

## II. The Court should grant rehearing en banc to restore its longstanding test to determine when federal-court and state-court claims are the same.

The *Wessinger II* panel relied on *Nelson* to hold that Petitioner's federal habeas sentencing-phase IAC claim was the same as the sentencing-phase IAC claim he raised in state court and, thus, subject to § 2254(d). Panel Op. 20. But *Nelson* was wrongly decided, broke with

decades of precedent and with *Wessinger I*, and conflicts with the approach of other circuits.

### A. *Nelson* and *Wessinger II* upended decades of decisions from this Court.

In *Vasquez v. Hillery*, the Supreme Court set forth a test for claim-sameness: it depends on whether "the prisoner has presented the substance of his claim to the state courts" or whether, instead, "supplemental evidence … fundamentally alter[s] the legal claim already considered by the state courts." 474 U.S. 254, 257, 260 (1986).

Before *Nelson*, in this Circuit a federal-court claim "fundamentally altered" a state-court claim when the federal claim (1) included new, material evidence that did more than supplement the existing record, *see Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014), (2) made "crucial" new allegations, *see Smith v. Quarterman*, 515 F.3d 392, 400 (5th Cir. 2008), or (3) otherwise "place[d] the claim[] in a significantly different legal posture," *Anderson v. Johnson*, 338 F.3d 382, 387 (5th Cir. 2003) (internal quotation marks and citations omitted). This Court consistently applied these formulations for decades. *See*, *e.g.*, *Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983); *Graham v. Johnson*, 94 F.3d 958 (5th Cir. 1996); *Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003).

*Nelson* marked a breathtaking change: under its test, all sentencing-phase IAC allegations made in federal court are "adjudicated on the merits" whenever *any* sentencing-phase IAC allegations were decided on the merits in state court. *See Nelson*, 72 F.4th at 658-660. The *Nelson* panel expressly rejected the longstanding, commonsense premise that "new, material factual allegations" can distinguish a new claim from an old one. *Id.* at 658.

It was initially unclear whether *Nelson's* new rule would hold. Months after *Nelson* was decided, another panel subjected several IAC sentencing-phase claims to separate analyses, applying § 2254(d) to some but not to others, implicitly rejecting the notion that such an IAC claim is necessarily part of the same claim. *Mendoza v. Lumpkin*, 81 F.4th 461, 473, 476 (5th Cir. 2023). But *Wessinger II* doubled-down on *Nelson's* test and overruled *Wessinger I* on the basis of *Nelson*. The panel accepted that IAC claims are "'specific to a particular stage of a proceeding' and that a petitioner cannot 'disaggregate' 'alleged instances of ineffective assistance of counsel . . . to create new, unadjudicated claims.'" Panel Op. 19 (quoting *Nelson*, 72 F.4th at 659-60). The panel concluded that "[u]nder *Nelson*, Wessinger's new evidence is not enough to

fundamentally alter the ineffective assistance claim adjudicated in the state court," and therefore "the state court adjudicated that claim on the merits" and "§ 2254(d) bars relief." Panel Op. 20 (citing *Nelson*, 72 F.4th at 659) (internal quotations and additional citations omitted).

### B. *Nelson* is wrong and in conflict with every other circuit.

*Nelson's* holding that two IAC claims targeted at the same "stage of the proceeding" cannot be distinct from each other, 72 F.4th at 660, is inconsistent with *Vasquez*. Other Supreme Court decisions underscore the problem. In *Shinn v. Ramirez*, for example, a petitioner's guilt-phase IAC claim was denied on the merits in state court, leaving the Supreme Court to analyze a different bundle of guilt-phase IAC allegations raised for the first time in federal court—which the Court treated as a distinct claim. *See* 596 U.S. 366, 371, 374 (2022). *Ramirez* is just one of many Supreme Court cases recognizing multiple, distinct IAC claims arising from the same "stage of a proceeding." *See*, *e.g.*, *Smith v. Spisak*, 558 U.S. 139, 149 (2010) (addressing one of two sentencing-phase IAC claims); *Lockhart v. Fretwell*, 506 U.S. 364, 367 (1993) (adjudicating one of multiple sentencing-phase IAC claims). The other courts of appeals follow the Supreme Court's precedent. *See*, *e.g.*, *Moore v. Stirling*, 952

F.3d 174, 182-85 (4th Cir. 2020); *Sears v. Warden GDCP*, 73 F.4th 1269, 1286 n.10 (11th Cir. 2023); *Detrich v. Thornell*, 178 F.4th 1183, 1211 (9th Cir. 2026).

*Nelson* also misinterprets the statute. The Supreme Court has explained that a habeas claim is "an asserted federal basis for relief from a state court's judgment of conviction." *Gonzalez v. Crosby*, 545 U.S. 524, 530, 533 (2005). Section 2254 does not define the term and "courts have construed ['claim'] to bear its *usual meaning* in federal pleading of a set of facts giving rise to a right to a legal remedy." BRIAN R. MEANS, POSTCONVICTION REMEDIES § 27:31 (June 2026 update) (emphasis added) (citations omitted). Under this understanding of "claim," the word cannot encompass two substantially distinct sets of legally operative factual allegations. *See*, *e.g.*, *Lucio v. Lumpkin*, 987 F.3d 451, 472 (5th Cir. 2021) (en banc) (plurality opinion) (criticizing a petitioner's attempt to "raise different claims at different times with different facts in the state court, then smush them all together into a single claim in federal court").

### C. Petitioner's sentencing-phase IAC Claim is a fundamentally altered, new claim.

The district court held that Petitioner's sentencing-phase IAC claim "was a new claim" because "the additional evidence Wessinger has presented to this Court is material and significantly different and stronger than what he presented to the state court." ROA.3237. The district court's conclusion rested upon this Court's well-established holdings in *Graham*, *Brown*, and *Kunkle* and upon the evidentiary support for Petitioner's new claim, including a "psychiatric evaluation, neuropsychological testing, evidence of low intellectual functioning, and evidence of isolation and abuse." ROA.3237. As the court stated: "[n]one of this was presented to the state habeas court." ROA.3237. The decision held for nearly fifteen years—until *Nelson* erroneously overturned this Circuit's prior precedents, and the *Wessinger II* panel, in turn, relied on *Nelson* to overturn the conclusion from *Wessinger I*. This Court should grant rehearing and reinstate the prior rulings in this case finding Petitioner's sentencing-phase IAC claim to be a new claim.

## III. The Court should reconsider whether a federal claim has been "adjudicated on the merits" under § 2254(d) where the state court did not afford a full and fair hearing.

*Nelson's* test highlights the importance of resolving another circuit split. This Court holds that a "a full and fair hearing [in state court] is

not a precondition … to applying § 2254(d)'s standards of review." *Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001). The First and Sixth Circuit follow the same approach. But the Second, Fourth, and Tenth Circuits hold otherwise. *See*, *e.g.*, *Valentino v. Clarke*, 972 F.3d 560, 577 n.15 (4th Cir. 2020); *Wilson v. Workman*, 577 F.3d 1284, 1292-1293 (10th Cir. 2009) (en banc), *abrogated on state-law grounds as noted in Lott v. Trammell*, 705 F.3d 1167, 1212-13 (10th Cir. 2013); *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003).

This Court should take this opportunity to revisit *Valdez* and hold that, because Petitioner was denied a full and fair hearing in state court, its resolution of his IAC claim should not be subject § 2254(d).

Section 2254(d) applies only where there has been an "adjudication on the merits." That phrase means "a decision finally resolving the parties' claims, *with res judicata effect*, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Sellan v. Kuhlman,* 261 F.3d 303, 311 (2d Cir. 2001) (emphasis added); *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (Section 2254(d) is a "modified res judicata rule") (quotations omitted). In the context of res judicata, that "old soil" includes "a full and fair opportunity" to litigate

the claim. *See, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Bedrock habeas-law principles confirm that a petitioner must have “a full and fair opportunity” to litigate a claim in *some* court. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

*Nelson* and *Valdez* combine to puts claimants like Petitioner who are not provided a full and fair hearing in state court in an impossible situation. As the district court concluded, Petitioner was unable to adequately present his claim in state court due to “mere happenstance” and the unlawful denial of resources that “were provided as a matter of course to others similarly situated.” ROA.16613, 16621. Because of LIDAB’s unlawful policy, Petitioner is the *only* Louisiana Death Row inmate represented by *pro bono* counsel during this period who was denied state postconviction expert and investigative funding. ROA.16619.

This Court should grant rehearing and hold that a petitioner who not been afforded a full and fair opportunity to litigate a claim in state court must be given that opportunity in federal habeas proceedings.

## CONCLUSION

For the foregoing reasons, Petitioner Todd Wessinger requests that the Court grant this Petition for Rehearing *En Banc;* adhere to the legal and factual findings of the prior panel; and, affirm the district court's grant of relief. In the alternative, Petitioner requests that the Court remand the case to the district court for a determination of whether Petitioner can overcome § 2254(d) and, if so, whether relief should be granted.

Respectfully submitted,

*s/ Cristie Gautreaux Gibbens*
CRISTIE GAUTREAUX GIBBENS
Federal Public Defender for the
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
(337) 262-6336
Cristie_Gibbens@fd.org

DAVID AARON NOVOD
Assistant Federal Public Defender
Federal Public Defender's Office for the
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
(337) 262-6336
David_Novod@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by the 5th Circuit electronic filing system on counsel for the Respondent-Appellant, on this day September 15, 2026.

*s/Cristie Gautreaux Gibbens*
**CRISTIE GAUTREAUX GIBBENS**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This document complies with the type-volume limitation of Fed. R. App. P. 40(d)(3)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Fifth Cir. R. 40.2.5, this document contains 3,893 words (3,900 word limit).

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century typeface with a 14-point font.

Lafayette, Louisiana, September 15, 2026.

*s/Cristie Gautreaux Gibbens*
**CRISTIE GAUTREAUX GIBBENS**

**APPENDIX A**

Panel Opinion in *Wessinger v. Vannoy*,
No. 25-70012 (5th Cir. August 18, 2026)

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 18, 2026
Lyle W. Cayce
Clerk

No. 25-70012

Todd Kelvin Wessinger,

*Petitioner—Appellee*,

*versus*

Darrel Vannoy, *Warden, Louisiana State Penitentiary*,

*Respondent—Appellant*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:04-CV-637

Before Higginson, Willett, and Oldham, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:*

Thirty-one years ago, Todd Wessinger shot three former co-workers—killing two, wounding another—and tried to shoot a fourth. A Louisiana jury sentenced him to death. Nine years ago, we reversed a district court's grant of habeas relief on Wessinger's claim that his counsel was

* Judge Oldham concurs only in the judgment.

ineffective for failing to present mitigating evidence.[1] But the case has returned. After our reversal, the district court granted relief again on the same claim, this time on a different theory. That second grant, no less than the first, exceeds the narrow limits Congress has placed on federal review of state convictions. We therefore REVERSE.

## I. Background

This case has a long, tangled procedural history.

### A. The Murders, Trial, and Sentence

On the morning of November 19, 1995, Wessinger rode his bicycle to Calendar's Restaurant in Baton Rouge, Louisiana.[2] A former employee, he arrived armed with a semi-automatic pistol.[3] After exchanging greetings with Mike Armentor, Wessinger entered through the rear door and shot him twice in the back.[4] Wessinger then tried to shoot dishwasher Alvin Ricks in the head, but the gun would not fire.[5] As Ricks fled, Wessinger aimed at his leg—but the gun misfired again.[6]

Hearing the commotion from her office, the manager on duty, Stephanie Guzzardo, dialed 911.[7] Before an operator answered, Wessinger

---

[1] *See Wessinger v. Vannoy*, 864 F.3d 387, 389 (5th Cir. 2017).

[2] *State v. Wessinger*, 736 So. 2d 162, 169 (La. 1999).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

entered the office.[8] Guzzardo begged for her life.[9] Wessinger shot her through the heart.[10] He then took roughly $7,000 from the office, found cook David Breakwell hiding in a cooler, and shot him too as he begged for his life.[11]

Guzzardo died within a minute. Breakwell died on the way to the hospital.[12] Armentor, however, survived and testified against Wessinger at trial.[13] A jury convicted Wessinger of two counts of first-degree murder and sentenced him to death.[14]

### B. State Direct Review and Post-conviction Proceedings

Wessinger appealed, arguing, as relevant here, that trial counsel had been ineffective.[15] The Louisiana Supreme Court affirmed, holding that Wessinger's ineffective-assistance claim should be "relegated to post-conviction proceedings."[16]

In 2000, Wessinger filed a skeletal petition for post-conviction relief in state court. His pro bono post-conviction counsel sought investigative funding from various indigent-assistance entities and from the post-conviction court, but each request was denied.

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 169 & n.1.

[14] *Id.* at 169.

[15] *See id.* at 170–97.

[16] *Id.* at 195, 197.

After securing $5,000 from his firm, post-conviction counsel filed a second amended petition. It alleged that trial counsel had performed ineffectively at the penalty phase by failing to conduct an adequate mitigation investigation.

The state post-conviction court denied relief.

### C. Federal Habeas Proceedings

Wessinger then sought relief in federal court. His initial petition raised a penalty-phase ineffective assistance claim mirroring the claim in his amended state post-conviction petition.

Six years later, Wessinger filed an amended petition that bolstered the claim with additional mitigating evidence he says a competent investigation would have uncovered, including evidence of childhood poverty and abuse, a seizure disorder, and neurological problems.

#### 1. Initial Denial of Relief

The district court first denied relief.

It held that the state court had adjudicated Wessinger's penalty-phase ineffective-assistance claim on the merits, triggering § 2254(d)'s limits on relief.[17]

The court then concluded that the state court's rejection of the claim was not unreasonable because the defense had strategically chosen to "paint[] Wessinger as a good person who suffered from alcoholism and was not his normal self when he committed the murders."

[17] *See* 28 U.S.C. § 2254(d).

Concluding that Wessinger had not made "a substantial showing of the denial of a constitutional right," the district court declined to issue a certificate of appealability.[18]

2. First Post-Judgment Motion

One week after the district court entered judgment, the Supreme Court decided *Martinez v. Ryan*, which recognized a "narrow exception" to the general rule that "an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default."[19]

Under *Martinez*, "[i]nadequate assistance of counsel at initial-review collateral proceedings"—that is, "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance" of counsel—"may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."[20] *Martinez* abrogated our earlier cases rejecting such an exception.[21]

Wessinger timely moved to alter or amend the judgment under Rule 59(e). For the first time, he argued that the additional allegations in his amended federal habeas petition had fundamentally altered his penalty-phase ineffective-assistance claim. In his view, the claim presented in federal court

---

[18] *See* 28 U.S.C. § 2253(c)(2).

[19] 566 U.S. 1, 9 (2012).

[20] *Id.* at 8–9.

[21] *See, e.g.*, *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004) (per curiam) ("[A] state prisoner may not cite the ineffective assistance of state habeas counsel as 'cause' for a procedural default even for 'cases involving constitutional claims that can only be raised for the first time in state post-conviction proceedings.'" (quoting *Martinez v. Johnson*, 255 F.3d 229, 240 (5th Cir. 2001))).

had never been presented to the state courts and thus had never been adjudicated on the merits there.

He acknowledged the implication: the claim was procedurally defaulted. But invoking *Martinez* as an intervening change in law, he argued that ineffective assistance by state post-conviction counsel supplied cause and prejudice to excuse that default.

Alternatively, he argued that the denial of funding for his post-conviction investigation rendered the state process inadequate to protect his rights, thus establishing cause and prejudice.

The district court granted the motion in part. It agreed with Wessinger that the additional evidence presented in federal court rendered his penalty-phase ineffective assistance claim a "new claim" that had never been presented to the state courts.

The court therefore reopened the case and ordered an evidentiary hearing on cause and prejudice and on the merits of Wessinger's penalty-phase ineffective assistance claim.

3. First Grant of Relief

After a multi-day hearing, the district court granted relief.

The court first found that post-conviction counsel had been ineffective in failing to pursue a substantial ineffective-assistance claim against trial counsel.

Turning to the merits—which it reviewed free of § 2254(d)'s constraints because, in its view, the claim had not been adjudicated in state court—the district court found that trial counsel performed deficiently by failing to "conduct a mitigation investigation" or to "provide anything more than a large number of unprepared witnesses at the penalty phase." It further found "a reasonable probability that the evidence of [Wessinger's] brain

damage and other impairments, as well as his personal and family history would have swayed at least one juror to choose a life sentence."

4. Our Prior Reversal

Louisiana appealed, and we reversed.[22]

We held that post-conviction counsel's "performance in raising and developing Wessinger's claim for ineffective assistance of trial counsel at the penalty phase was not deficient" because any shortcomings in the post-conviction investigation stemmed from the denial of funding, not from counsel's own deficient performance.[23]

Because Wessinger could not show cause and prejudice under *Martinez*, we did not reach Louisiana's remaining arguments.[24] Instead, we reversed the district court's grant of relief outright, without expressly remanding for further proceedings.[25]

In a separate order, we denied Wessinger's request for a certificate of appealability to cross-appeal the denial of his other claims.[26]

On March 5, 2018, the Supreme Court denied certiorari over Justice Sotomayor's dissent.[27]

---

[22] *Wessinger*, 864 F.3d at 389.

[23] *Id.* at 392.

[24] *See id.* at 391.

[25] *See id.* at 393.

[26] *See Wessinger v. Vannoy*, 704 F. App'x 309, 316 (5th Cir. 2017) (per curiam).

[27] *Wessinger v. Vannoy*, 138 S. Ct. 952 (2018); *see id.* at 952–54 (Sotomayor, J., dissenting).

5. Second Post-Judgment Motion

But the litigation did not end there.

More than two years after we reversed the district court's judgment, and more than a year and a half after the Supreme Court denied certiorari, Wessinger filed a "motion for summary judgment, or, in the alternative, for an evidentiary hearing on cause and prejudice, or, in the alternative, for relief from judgment" (the "second post-judgment motion").

Although he acknowledged that our decision foreclosed any finding that *Martinez* excused his procedural default, he argued that it left open a different route: cause and prejudice based on the inadequacy of the state-court process.

Shortly after Wessinger filed that motion, the case was reassigned. The new district judge initially denied the motion, reasoning that our mandate foreclosed relief and that Wessinger's request for relief from judgment was untimely under Rule 60(c)(1).

Wessinger responded with another Rule 59(e) motion, asking the district court to reconsider. He argued that the court had misread the effect of the earlier judgment—the one we reversed—and, as a result, had misapplied the mandate rule.

The district court granted the motion in part. It agreed that its earlier application of the mandate rule rested on manifest error. The court therefore allowed Wessinger to file an amended summary-judgment motion pressing his inadequate-state-process theory.

6. Second Grant of Relief

Two years later, the district court again granted relief.

The court held that Wessinger had established cause and prejudice under his inadequate-state-process theory, concluding that the denial of funding during state post-conviction proceedings was "arbitrary and unlawful" and "caused the procedural default of Wessinger's penalty phase ineffective assistance of counsel claim."

Turning to the merits, the court compared the mitigation evidence presented at trial with the evidence later developed at the federal evidentiary hearing and concluded that "[t]he inaccurate and incomplete information presented to the jury during the penalty phase deprives this case of the appropriate degree of reliability that death is the appropriate punishment." It therefore ordered a new sentencing.

7. Louisiana's Post-Judgment Motion

This time, Louisiana invoked an intervening change in law. Five days before the district court's second order granting relief, a panel of this court held in *Crawford v. Cain* that habeas relief is unavailable to petitioners who make no colorable claim of factual innocence.[28] Louisiana moved for reconsideration under Rule 59(e), arguing that *Crawford* barred relief.

While that motion was pending, the full court agreed to rehear *Crawford* en banc, thus vacating the panel opinion and stripping it of precedential effect.[29] The district court then stayed Louisiana's Rule 59(e)

---

[28] 55 F.4th 981, 994–96 (5th Cir. 2022), *withdrawn and superseded*, 68 F.4th 273 (5th Cir. 2023), *vacated on reh'g en banc*, 122 F.4th 158 (5th Cir. 2024) (en banc).

[29] *Crawford v. Cain*, 72 F.4th 109 (5th Cir. 2023) (mem.); *see United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384, 389 (5th Cir. 2008) (explaining that when the full court agrees to rehear a case en banc, the panel opinion is "automatically vacated" and therefore "is not precedent").

motion pending the en banc proceedings and any petition for certiorari in *Crawford*.

The stay remained in place for nearly two years. After we issued our en banc decision in *Crawford*—which did not adopt the panel's factual-innocence requirement[30]—and after the Supreme Court denied certiorari, the district court lifted the stay and denied Louisiana's Rule 59(e) motion.

Louisiana timely appealed.

## II. Analysis

### A. No Improper Reopening Occurred

Two threshold issues come first: whether the district court improperly reopened the case after our earlier reversal and whether it lacked jurisdiction to consider Wessinger's second post-judgment motion. The answer to both is no.

Ordinarily, "[o]ur first task" (after assuring ourselves of our *own* jurisdiction) "is to determine whether the district court had jurisdiction."[31]

---

[30] *See* 122 F.4th 158.

[31] *Anderson v. Am. Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir. 1993); *see MS Tabea Schiffahrtsgesellschaft MBH & Co. KG v. Bd. of Comm'rs of the Port of New Orleans*, 636 F.3d 161, 164 (5th Cir. 2011) ("Before we address the district court's subject matter jurisdiction we must first determine our own."). In this case, our appellate jurisdiction is beyond doubt: the district court's order granting relief was a "final order" appealable under 28 U.S.C. § 2253(a), *see Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 265–67 (1978), and though § 2253(c)(1)(A) ordinarily deprives us of jurisdiction when the appellant has not received a certificate of appealability, *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners."); *Titsworth v. Dretke*, 401 F.3d 301, 305 (5th Cir. 2005) ("A certificate of appealability is a jurisdictional prerequisite to this appeal."), we have held that the certificate-of-appealability requirement applies only to a prisoner's appeal from the *denial* of habeas relief, not a State's appeal from the *grant* of habeas relief, *Smith v. Davis*, 927 F.3d 313, 319–20 (5th Cir. 2019); *see also* Fed. R. App. P. 22(b)(3) ("A certificate of appealability is not required when a state or its representative . . . appeals.").

But the Supreme Court has recognized that some "threshold question[s]" may be resolved first.[32] And in *Waetzig v. Halliburton Energy Services, Inc.*, the Court held that one such question—whether the district court improperly reopened a closed case—is "antecedent to" jurisdiction and thus "*must* be addressed before any subsequent jurisdictional questions."[33] So we begin there.

Louisiana argues that, because Wessinger's request to reopen was untimely under Rule 60(c) and failed to satisfy the criteria for reopening under Rule 60(b), the district court should never have reopened the case—and thus should never have adjudicated Wessinger's second post-judgment motion. That argument misapprehends the case's posture. When Wessinger filed his second post-judgment motion, no operative final judgment remained. There was nothing to reopen; the case was already open.

At that point, the most recent final judgment was the first judgment granting relief. But we reversed that judgment,[34] leaving "the parties precisely in the same situation . . . as if no such judgment had ever existed."[35]

---

[32] *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (citation omitted); *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007).

[33] 604 U.S. 305, 310–11 (2025) (emphasis added).

[34] *See Wessinger*, 864 F.3d at 393.

[35] *Harvey v. Richards*, 11 F. Cas. 740, 745 (C.C.D. Mass. 1814) (No. 6182) (Story, J.); *see also Kring v. Missouri*, 107 U.S. (17 Otto) 221, 241 (1883) ("When he asks to have the conviction reversed, he understands that if his application is granted, the judgment must be set aside with the same effect as if it had never been rendered."); *Langley v. Prince*, 926 F.3d 145, 164 (5th Cir. 2019) (en banc) ("[O]nce a civil judgment is reversed on appeal, it's obviously no longer 'valid' . . . ."); *Atl. Coast Line R.R. Co. v. St. Joe Paper Co.*, 216 F.2d 832, 833 (5th Cir. 1954) (per curiam) ("To reverse a judgment . . . means to overthrow it by a contrary decision, to make it void, to undo or annul it for error."); *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008) ("It has long been well established that the reversal of a lower court's decision sets aside that decision, leaves it 'without any validity, force, or effect,' and requires that it be treated thereafter as though it never existed."

Between issuance of our mandate and Wessinger's second post-judgment motion, no new judgment was entered. The case thus sat without an operative judgment. There was no "final judgment, order, or proceeding" from which relief could be sought under Rule 60(b).

Louisiana counters that the case remained closed because our earlier reversal was "remand-free." Our precedent says otherwise. Although "[a] district court loses all jurisdiction over matters brought to the court of appeals upon the filing of a notice of appeal,"[36] it "reacquires jurisdiction" when our mandate issues.[37] That is so even absent an "explicit remand."[38] We have long understood decretal language that simply reverses a judgment to operate as an implicit remand, "return[ing]" the case "to the district court."[39]

To be sure, we have authority to render judgment ourselves[40] or to "remand the cause and direct the entry of [the] appropriate judgment."[41] But

---

(quoting *Butler v. Eaton*, 141 U.S. 240, 244 (1891))); *cf. Hewitt v. United States*, 606 U.S. 419, 431 (2025) ("[V]acated court orders are void *ab initio* and thus lack any prospective legal effect.").

[36] *Rutherford v. Harris Cnty.*, 197 F.3d 173, 190 (5th Cir. 1999).

[37] *Newball v. Offshore Logistics Int'l*, 803 F.2d 821, 826 (5th Cir. 1986); *see BHTT Ent., Inc. v. Brickhouse Cafè & Lounge, L.L.C.*, 858 F.3d 310, 312–13 (5th Cir. 2017) ("The list of cases in which this court states unequivocally that the district court re-assumes jurisdiction once the mandate issues is long." (footnote omitted)).

[38] *See Newball*, 803 F.2d at 825.

[39] *Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir. 1984).

[40] *See United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 467 (5th Cir. 2015) ("Finally, we note that we 'have power not only to correct error in the judgment under review but to make such disposition on the case as justice requires.'" (quoting *Patterson v. Alabama*, 294 U.S. 600, 607 (1935)).

[41] 28 U.S.C. § 2106.

we did not exercise that authority in our earlier decision. We simply "reverse[d] the district court's grant of habeas relief."[42]

Although our earlier decision did not expressly remand the case, the mandate returned it to the district court. Because no final judgment remained in place, the case stayed open and Wessinger's second post-judgment motion required no reopening. We therefore do not consider whether the motion could have satisfied Rule 60(b) or Rule 60(c).

### B. The District Court Had Jurisdiction Over the Second Post-Judgment Motion

That leaves the second threshold question: whether the district court could exercise jurisdiction over Wessinger's second post-judgment motion.

In the district court, Louisiana argued that Wessinger's second post-judgment motion was in substance a second or successive habeas petition. If so, the motion would be subject to § 2244(b)'s demanding limits on second or successive petitions.[43] And even if Wessinger could satisfy those limits, he still could not file in the district court without first obtaining authorization from this court.[44] We have repeatedly held that this authorization requirement "acts as a jurisdictional bar to the district court's asserting jurisdiction over any successive habeas petition until this court has granted

---

[42] *Wessinger*, 864 F.3d at 393 (emphasis deleted).

[43] *See Moore v. Quarterman*, 533 F.3d 338, 340 (5th Cir. 2008) (per curiam) ("Federal cognizance of second or successive § 2254 petitions is governed by strict standards under [AEDPA].").

[44] *See* 28 U.S.C. § 2244(b)(3)(A).

the petitioner permission to file one."[45] And even though Louisiana does not press the point on appeal, we must address it *sua sponte*.[46]

Wessinger's second post-judgment motion was not a second or successive habeas petition. Instead, it "merely asserts that a previous ruling which precluded a merits determination was in error."[47]

"As a textual matter, § 2244(b) applies only where the court acts pursuant to a prisoner's 'application.'"[48] And "for purposes of § 2244(b), an 'application' for habeas relief is a filing that contains one or more 'claims.'"[49] So a filing that "present[s] new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion"—must be treated as a second or successive application.[50] But "[w]hen no 'claim' is presented, there is no basis for contending that the . . . motion should be treated like a habeas corpus application"[51] subject to § 2244(b).

---

[45] *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000) (per curiam); *see also Burton v. Stewart*, 549 U.S. 147, 152 (2007) (per curiam) ("[B]ecause the . . . petition is a 'second or successive' petition that Burton did not seek or obtain authorization to file in the District Court, the District Court never had jurisdiction to consider it in the first place."); *Adams v. Thaler*, 679 F.3d 312, 321 (5th Cir. 2012) ("If Adams's petition is successive, then the district court did not have jurisdiction to consider the petition because Adams did not obtain our prior authorization pursuant to 28 U.S.C. § 2244(b)(3)(A)."); *Crone v. Cockrell*, 324 F.3d 833, 836 (5th Cir. 2003) ("[T]his Court must address whether Crone's petition is 'successive' within the meaning of § 2244(b)(3)(A) because our appellate jurisdiction is implicated.").

[46] *Crone*, 324 F.3d at 836.

[47] *Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005).

[48] *Calderon v. Thompson*, 523 U.S. 538, 554 (1998).

[49] *Gonzalez*, 545 U.S. at 530.

[50] *Id.* at 531.

[51] *Id.* at 533.

Wessinger's second post-judgment motion did not "seek[] to add a new ground for relief," nor did it "attack[] the federal court's previous resolution of [the] claim *on the merits*."[52] Instead, it challenged the district court's failure to address his inadequate-state-process theory of cause and prejudice. And where a habeas petitioner "merely asserts that a previous ruling which precluded a merits determination"—such as "a denial for such reasons as . . . procedural default"—"was in error," he is not "making a habeas corpus claim."[53] His filing therefore is not a second or successive application.

The district court thus had jurisdiction to entertain Wessinger's second post-judgment motion. We turn, then, to the merits.

### C. Section 2254(d) Bars Relief

When Congress first exercised its constitutional "Power . . . [t]o constitute Tribunals inferior to the supreme Court,"[54] it authorized federal courts to issue writs of habeas corpus only to federal prisoners.[55] But with the Habeas Corpus Act of 1867, Congress empowered federal courts to "grant writs of habeas corpus in all cases where *any* person"—including a state prisoner—"may be restrained of his or her liberty in violation of" federal law.[56]

---

[52] *Id.* at 532 (footnote omitted).

[53] *Id.* at 532 n.4.

[54] U.S. CONST. art. I, § 8, cl. 9.

[55] Judiciary Act of 1789, § 14, 1 Stat. 73, 81.

[56] Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385, 385–86.

That authority, however, comes with limits. Some are judicially created.[57] Others are statutory.[58] Still others—such as the requirement that a state prisoner first exhaust state remedies—began as judge-made rules before Congress eventually codified them.[59]

One divide matters most here: whether the claim was properly presented in state court. That divide determines the framework for federal habeas review. If a claim was "adjudicated on the merits in State court proceedings," § 2254(d) bars relief unless "the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[60]

The exceptions should not obscure the main point: § 2254(d) erects a formidable barrier to federal habeas relief—and Congress intended it to. It forbids revisiting a state-court merits adjudication that is "merely wrong"—or even one that amounts to "clear error."[61]

If, by contrast, a claim was *not* adjudicated on the merits in state court, § 2254(d) falls away.[62] But the petitioner is hardly home free. In most such

---

[57] *See Woodford v. Ngo*, 548 U.S. 81, 91 n.2 (2006) (describing procedural default as a "judge-made doctrine" (quotation omitted)).

[58] *See, e.g.*, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104–132, 1 Stat. 1214.

[59] *See Lucio v. Lumpkin*, 987 F.3d 451, 463 (5th Cir. 2021) (en banc) (plurality opinion) (describing the history of the exhaustion requirement).

[60] 28 U.S.C. § 2254(d).

[61] *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation omitted).

[62] *See Thomas v. Davis*, 968 F.3d 352, 354 (5th Cir. 2020).

cases—whether because the state court rejected the claim on procedural grounds or because the petitioner never presented it to the state courts at all—the claim will be procedurally defaulted.[63] And "federal courts generally decline to hear" procedurally defaulted claims.[64] Still, the procedural-default rule, like § 2254(d), "is subject to two exceptions."[65] A defaulted claim may be considered if (1) "the prisoner can show cause for and prejudice from the procedural default," or (2) refusing to consider the claim "would result in a fundamental miscarriage of justice."[66]

"Generally," deciding which track a claim belongs on—the § 2254(d) track or the procedural-default track—is "straightforward."[67] But when "the support for the prisoner's federal claim evolves across the state and federal proceedings," the classification becomes "more difficult."[68] A court must then determine whether the "claim presented in federal court is in fact

[63] *See In re Davila*, 888 F.3d 179, 187 (5th Cir. 2018) (per curiam). This dichotomy captures the vast majority of claims—but not all. A claim may be "fairly presented to the state court," "not procedurally defaulted," and yet not adjudicated on the merits. *See Powell v. Quarterman*, 536 F.3d 325, 343 (5th Cir. 2008). That can occur, for example, when the state procedural ground is inadequate to support the judgment or depends on federal law, *see, e.g.*, *Lee v. Kemna*, 534 U.S. 362, 376 (2002), or when the state court "inadvertently overlook[s]" a claim, *see Johnson v. Williams*, 568 U.S. 289, 303 (2013). In such cases, "the deferential [§ 2254(d)] standards of review do not apply." *Powell*, 536 F.3d at 343.

It is also possible for a claim to be *both* procedurally defaulted and subject to § 2254(d)—for example, when the state court rejects the claim on the merits but "also invoke[s] a procedural bar as an alternative basis to deny relief." *Busby v. Dretke*, 359 F.3d 708, 721 n.14 (5th Cir. 2004). These situations, however, are unusual. Most claims fall on one of two tracks: procedural default or § 2254(d).

[64] *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022).

[65] *Rocha v. Thaler*, 626 F.3d 815, 822 (5th Cir. 2010).

[66] *Id.*

[67] *Nelson v. Lumpkin*, 72 F.4th 649, 658 (5th Cir. 2023).

[68] *Id.*

a new claim altogether, . . . or simply the old one already adjudicated in state court."[69]

Wessinger tries to steer between the Scylla of § 2254(d) and the Charybdis of procedural default. His argument proceeds in two steps. First, he says the new evidence and allegations in his amended federal habeas petition—never presented in state court—so fundamentally alter his claim that the claim now before us is not one the state courts rejected. Second, recognizing that this premise would itself make the claim procedurally defaulted, he contends that the inadequacy of the state-court process supplies cause to excuse the default. The maneuver is clever. AEDPA blocks it.

Louisiana answers that Wessinger's gambit fails at both steps. Louisiana is right at the first step. Because Wessinger's new evidence and allegations do not so fundamentally transform his claim as to make it different from the claim the state courts rejected, we need not reach the second.[70]

The Supreme Court has never "decide[d] where to draw the line between new claims and claims adjudicated on the merits."[71] Our decision in *Nelson v. Lumpkin*, however, provides a useful guidepost.[72] There, the petitioner "raised a single ineffective assistance of counsel claim" in state court, arguing "that his trial counsel failed to adequately investigate and

---

[69] *Id.*

[70] Louisiana also makes a number of other arguments which we need not address, including that Wessinger has abused the writ, that any new claim would be time-barred, that Wessinger is judicially estopped from asserting his inadequate state-court process theory, that the mandate rule required the district court to reject that theory, and that Wessinger's ineffective assistance claim fails on the merits.

[71] *Cullen v. Pinholster*, 563 U.S. 170, 186 n.10 (2011).

[72] *See* 72 F.4th at 659–60.

present mitigation evidence."[73] Had counsel investigated the petitioner's "background, history, family, and friends," he argued, counsel would have "discover[ed] relevant and important mitigation evidence that would have made a difference at the penalty stage."[74] The state court rejected the claim, reasoning that counsel "made a 'well-reasoned' and informed strategic decision."[75]

In federal court, the petitioner again "raised a single ineffective assistance of counsel claim."[76] But this time, he identified specific mitigation theories counsel had failed to explore, including (1) that the participation of two third-party suspects may have diminished his culpability, (2) the theory that the victim "died of suicide rather than at the hands of" the petitioner, and (3) "evidence about [the petitioner's] background and mental health."[77]

We held that these additional "instances of trial counsel's alleged deficient performance at sentencing" were "not enough to fundamentally alter the ineffective assistance claim adjudicated in the state court."[78] Because an ineffective-assistance claim "is specific to a particular stage of a proceeding" and because this one concerned sentencing, we explained that a petitioner cannot "disaggregate" "alleged instances of ineffective assistance of counsel . . . to create new, unadjudicated claims and thereby circumvent § 2254(d)'s limitations."[79]

---

[73] *Id.* at 659 (cleaned up).

[74] *Id.* (cleaned up).

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.* at 659–60.

Wessinger does not meaningfully distinguish *Nelson*, even though Louisiana relies on it heavily. Instead, he argues that Louisiana forfeited any contention that the ineffective-assistance claim in his amended federal petition is the same claim he presented in state court for § 2254(d) purposes.

That argument fails for two reasons. For one thing, a State "cannot waive or forfeit § 2254(d)'s standard."[80] But even if Louisiana *could* forfeit the point, it did not. Louisiana repeatedly argued in the district court that Wessinger's claim had been adjudicated on the merits in state court. In doing so, it necessarily maintained that the claim Wessinger presses now is the same claim he presented then.

Under *Nelson*, Wessinger's new evidence "is not enough to fundamentally alter the ineffective assistance claim adjudicated in the state court."[81] The claim in Wessinger's amended state post-conviction petition and the claim in his amended federal habeas petition rest on the same "asserted federal basis for relief from a state court's judgment of conviction," with the latter simply adding additional theories about ineffectiveness at the penalty phase.[82] The claim in Wessinger's amended federal habeas petition is therefore the same claim presented to the state habeas court. And because the state court adjudicated that claim on the merits, § 2254(d) bars relief.[83]

---

[80] *Langley*, 926 F.3d at 162.

[81] 72 F.4th at 659; *see also Broadnax v. Lumpkin*, 987 F.3d 400, 407–10 (5th Cir. 2021) (finding that new evidence in support of a claim under *Batson v. Kentucky*, 476 U.S. 79 (1986), did not fundamentally alter the claim for purposes of § 2254(d)).

[82] *See Nelson*, 72 F.4th at 657 (quoting *Gonzalez*, 545 U.S. at 530).

[83] *See Lucio*, 987 F.3d at 465 ("For each claim that the state court adjudicated on the merits, AEDPA's relitigation bar applies.").

Long before Wessinger pivoted to his procedural-default theory, the district court had held that neither exception to § 2254(d) applied. Wessinger does not challenge that conclusion on appeal, instead focusing his arguments on the procedural default route the litigation took after the first appeal. His merits argument relies heavily on evidence adduced at the federal evidentiary hearing—evidence we may not consider in deciding whether § 2254(d) bars relief.[84] We therefore do not reconsider the district court's original conclusion that neither § 2254(d) exception applied.

## III. Conclusion

Wessinger's approach is clever: recast the claim as one never presented to the state courts, then argue that defects in the state process excuse the default that maneuver creates. But this clever reframing cannot evade AEDPA. What Wessinger calls a new claim is merely the old claim in new packaging. Section 2254(d) therefore bars relief.

We REVERSE the district court's grant of habeas relief and REMAND with instructions to enter final judgment denying the petition.

---

[84] *See Pinholster*, 563 U.S. at 181 ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); 28 U.S.C. § 2254(d)(2) (limiting "unreasonable determination of the facts" analysis to "the evidence presented in the State court proceeding").